René P. Tatro (SBN 078383)
Steven R. Tekosky (SBN 102918)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA  90071
Telephone:    (213) 225-7171
Facsimile:    (213) 225-7151
E-mail:        rtatro@ttsmlaw.com
                stekosky@ttsmlaw.com
                jmarkowitz@ttsmlaw.com

Attorneys for Plaintiff Pharmavite LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARMAVITE, LLC, a California limited liability company,<br><br>                 Plaintiff,<br><br>      v.<br><br>CLEAN LABEL PROJECT FOUNDATION, a Delaware corporation; PURE MARKET, LLC, a Colorado limited liability company; THIRD PARTY VALIDATION & VERIFICATION LLC dba ELLIPSE ANALYTICS, a Colorado limited liability company; and DOES 1-20,<br><br>          Defendants. | **Case No. 2:20-cv-8001**<br><br>**PHARMAVITE LLC'S COMPLAINT FOR:**<br><br>**(1) CIVIL RICO, 18 U.S.C. SECTION 1962;**<br><br>**(2) VIOLATION OF THE LANHAM ACT, 15 U.S.C.§ 1125(a);**<br><br>**(3) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§17200 et seq.; and**<br><br>**(4) DECLARATORY RELIEF, 28 U.S.C. § 2201 *et seq.***<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pharmavite LLC ("Pharmavite") hereby alleges as follows against defendants Clean Label Project Foundation, Pure Market, LLC, Third Party Validation & Verification LLC dba Ellipse Analytics, and Does 1-20 (collectively, "Defendants"):

## NATURE OF ACTION

1. The Defendants named in this complaint have combined in a money-making "protection racket" that Michael Avenatti likely would have envied:  Step 1. Use the cover of a not-for-profit entity to contrive a subjective and opaque purity "grading" system for dietary supplements that eschews the standards set by federal and state regulators but nonetheless purports to protect consumers; Step 2. Have that entity become a "retail partner" with another entity that is owned and controlled by a purportedly "independent" laboratory which conducts unspecified tests against unspecified standards; Step 3. Using the results of that "independent laboratory," award a "purity certificate" to those entities who pay the demanded fee, but have the "retail partner" publish a false "bad grade" for those whose products are no less pure, *and then demand millions of dollars in exchange for not filing a sham lawsuit claiming the products are "adulterated," not "clean," or "impure."*  To date, the lead named defendant has filed no fewer than 15 such lawsuits, and has threatened numerous others, including threatening to sue Plaintiff Pharmavite, unless Pharmavite pays millions of dollars for the lead named Defendant to stand down. Defendants' scheme and sham lawsuits are not in the interest of consumers or in furtherance of the truth regarding the products that Defendants reward or punish with their fictitious testing and grading system. But it is so well concealed behind a smokescreen of entities and fine print on Defendants' websites that it would be all but impossible for a consumer to ferret out the truth. This complaint, asserting claims under the U.S. Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Lanham Act, and California's Unfair Competition Law ("UCL"), among other claims, is the first step in pulling back the curtain on the deceptive and illegal extortion scheme that Defendants are perpetrating.

/ / /

**JURISDICTION AND VENUE**

2.      This court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331, 1332, 1367, 2201, and 2202; 18 U.S.C. Section 1964; and the doctrine of pendent jurisdiction. The amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Pharmavite's claims arose in this district, and Pharmavite or its agents may be found or transact affairs in this district. In addition, upon information and belief, Defendants have conducted business in this district by marketing, selling, and conveying "awards," "certifications," and favorable "grades" to entities doing business in this district, by sending threats of sham litigation to Pharmavite in this district for refusing to pay Defendants or participate in Defendants' evaluation charade as part of Defendants' extortionistic shake down scheme, and by disparaging Pharmavite's products nationally via the Internet, thereby causing harm to Pharmavite in this district. Venue in this district is therefore appropriate under 15 U.S.C. Section 22, 28 U.SC. Section 1391, and 18 U.S.C. Section 1965(a).

**THE PARTIES**

4.      Plaintiff Pharmavite LLC is a California limited liability company with its principal place of business in West Hills, California.

5.      Pharmavite manufactures, largely in California, Nature Made® brand vitamins and supplements. Among its products are two prenatal supplements, Nature Made® Prenatal Multi tablets and Nature Made® Prenatal Multi + DHA softgels, both of which come in several different sizes (collectively, the "Nature Made® Prenatal Supplements").

6.      Annually and over past decades, Pharmavite's investments of money and resources to ensure its products' quality and consistency is, and has been, substantial. Pharmavite cares about its consumers and strives to assure that consumers receive products that meet or exceed applicable regulatory standards. In that regard, Pharmavite voluntarily goes beyond applicable governmental standards governing dietary supplement safety, like those of the U.S. Food and Drug Administration

PHARMAVITE, LLC'S COMPLAINT

("FDA") and California Health and Safety Code Section 25249.5 *et seq.* ("Proposition 65"), and meets the even stricter standards and rigorous review of the United States Pharmacopeial Convention, Inc. ("USP"). Pharmavite has strong product ingredient and manufacturing protocols, and equally robust quality control procedures, which are carefully followed. Pharmavite does not put products into the marketplace unless they meet applicable governmental specifications as well as Pharmavite's own rigorous specifications—including those for quality and potency as of the products' respective expiration dates. Pharmavite's specifications on its Nature Made® Prenatal Supplements are in compliance with Proposition 65, FDA, and the USP. Pharmavite hires and uses well-qualified manufacturing and analytical personnel. Pharmavite has strong and protective product-ingredient standards and specifications. Pharmavite has proper finished-product specifications for all of its products, including the Nature Made® Prenatal Supplements, and Pharmavite's Certificates of Analysis for those Supplements confirm that their finished-product testing met all specifications.

7.     Defendant Clean Label Project Foundation ("CLP") is a Delaware nonprofit corporation with its principal place of business at 280 E. 1st Ave., Broomfield, Colorado.

8.     CLP claims that its mission is "to bring truth and transparency to food and consumer product labeling" by testing and "certifying" consumer products, using standards that are the antithesis of "transparent." CLP also states that it "encourage[s] brands to join [it] in becoming part of the solution to address the growing consumer concern of industrial & environmental contaminants and toxins in both food and consumer products"—by which, Pharmavite is informed and believes, and thereon alleges, that CLP means that it encourages brands (or their manufacturers) to pay CLP to "certify" their products. CLP advertises the so-called "certified" products on its website (https://cleanlabelproject.org) as purportedly being the "best" in certain categories, including prenatal vitamins, baby food, and protein powder.

9. Defendant Pure Market, LLC ("Pure Market") is a Colorado limited liability company with its principal place of business at 7000 Broadway, Suite 307, Denver, Colorado. CLP identifies Pure Market as its "advocacy retail partner."

10. Pure Market purports to "grade" consumer products (including the Nature Made® Prenatal Supplements) and publish those letter grades on its website (https://www.puremarket.com), and CLP directs consumers to the puremarket.com website to "view the worst" products in a given category. *See, e.g., https://cleanlabelproject.org/the-best-worst-prenatal-vitamin-products/*. Pure Market uses undefined descriptors including "poor," "fair," "good," and "excellent," and similarly undefined color-coded bars, to rate products' alleged "nutrition" and "purity," including heavy metals and pesticides. Pure Market also compares the consumer products it "grades" with other purportedly similar products.

11. Defendant Third Party Validation & Verification LLC dba Ellipse Analytics ("Ellipse Analytics") is a Colorado limited liability company with the same principal place of business as Pure Market, *i.e.*, 7000 Broadway, Suite 307, Denver Colorado. Ellipse Analytics performs the testing on which CLP and Pure Market rely in "grading" and ranking the various consumer products as "best" and "worst." These products include Pharmavite's Nature Made® Prenatal Supplements.

12. Pure Market is owned by Ellipse Analytics. Both defendants share a single Chief Executive Officer ("CEO"), Kevin Hicks ("Hicks"). Pure Market and Ellipse Analytics have additional overlapping management and employees. Moreover, Hicks has contacted Pharmavite on behalf of CLP, identifying himself as CLP's "Chief Client Advocate." In his contact with Pharmavite on behalf of CLP, Hicks threatened to direct CLP to sue Pharmavite on claims Pharmavite knows to be without any legal merit. CLP's Executive Director, Jackie Bowen, moreover, formerly was the President of Ellipse Analytics, and served both entities at the same time for several months. For these reasons, among others, Pharmavite is informed and believes and thereon alleges that Defendants CLP, Pure Market, Ellipse Analytical, and Does 1-20 constitute a single

enterprise (sometimes referred to herein as the "Product Testing, Grading, and Sham Lawsuit Enterprise") and have acted in conformity with a single enterprise with respect to the acts and violations of law alleged herein.

13.      At all times relevant to this Complaint, defendants CLP, Pure Market, Ellipse Analytics, and Does 1-20 acted in concert and as agents of each other to aid, effectuate and in furtherance of the illegal schemes set out herein.

## GENERAL ALLEGATIONS

14.      Or before July 14, 2020, and continuing to this day, Defendants used the mail and interstate wires, including their publicly accessible Internet websites which are marketed and promoted to consumers nationwide, in their employment of devices, schemes, and artifices to defraud, and engaged in acts, practices, and a course of conduct to fraudulently disparage the reputation of Pharmavite and its Nature Made® brand, and to extort money from Pharmavite. The actions of Defendants include the fraudulent making, posting, and linking to disparaging quality grades and rankings for certain of Pharmavite's Nature Made® Prenatal Supplements in comparison to dissimilar competing products. The actions of Defendants include the making of untrue statements of material facts; omitting material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaging in practices and courses of business which demonstrate a reckless indifference to truth and which operate as a fraud and deceit upon Pharmavite. Defendants' continuing fraudulent acts have resulted, and continue to result, in damage, injury, and detriment to Pharmavite, including to its reputation.

15.      Although well concealed, CLP's fraudulent extortion scheme is remarkably simple and remarkably nefarious. For a price, CLP offers to provide companies a "Certification" or "Award" for their products, including prenatal vitamins, baby food, and other types of products. CLP has a "Code of Practice: Certification" (the "CLP Certification Code of Practice") which instructed (as of August 29, 2020) that "[a]ll products seeking Clean Label Project Code of Practice certification shall pass a test to

ensure compliance to the Clean Label Project tolerances established in" Section VII thereof the CLP Certification Code of Practice ("Section VII").

16.     For dietary supplements like Pharmavite's Nature Made® Prenatal Supplements, Section VII sets the following not-to-be-exceeded maximum tolerance standards, among others, to obtain "Certification" from CLP:

- Cadmium: 4.1 micrograms/daily serving (by ingestion);
- Lead: 0.5 micrograms/daily serving; and
- Total Pesticides: "Code of Federal Registrar Pesticide Chemical Tolerance Levels for Food."

17.     CLP claims that the lead and cadmium standards in Section VII are based on the regulatory safe harbor standards set pursuant to Proposition 65.

18.     Pharmavite is informed and believes, and thereon alleges, that if a product meets the standards set out in CLP's Section VII, and if the manufacturer pays CLP for the Certification, CLP will grant the product its "Clean Label Project Certification."

19.     Pharmavite's Nature Made® Prenatal Supplements meet applicable federal and state quality requirements and standards, and (as explained below) meet CLP's Section VII's maximum tolerance limit requirements.

20.     CLP nonetheless, acting directly, and by and through and in concert with Defendants Ellipse Analytics and Pure Market posted on CLP's website via a link to Pure Market's website, based on testing by Ellipse Analytics, fraudulent and disparaging "quality grades" of C+ and D+ for two of the Nature Made® Prenatal Supplements in contravention of CLP's own Section VII's maximum tolerance limit requirements.

21.     Specifically, Defendants posted on Pure Market's website—to which CLP's website links—that the 90-count version of Nature Made® Prenatal Multi rates a grade of D+, although the 250-count version of the same product inexplicably was awarded a grade of C+. Pure Market lists the "purity" of both the 90-count and 250-count versions of the Nature Made® Prenatal Multi as "fair" (without explaining what that means), and lists the "heavy metals" in the 90-count version as "below average"

and in the 250-count version as "fair" (again without explaining what either means). The categories are depicted on Pure Market's website as lines of varying colors; on the 90-count version, the "heavy metals" category is red, while the overall "purity" is orange.

22.     These published "Grades" for Plaintiff's Nature Made® Prenatal Supplements are unsupported by Defendants' own published standards. They are bogus, unwarranted, and in contravention of CLP's own Section VII's maximum tolerance limit requirements. In this manner, Defendants, acting in concert, are disparaging Pharmavite and causing it reputational and monetary harm.

23.     Defendants' next step in their extortion scheme was to have CLP threaten to sue Pharmavite in a sham lawsuit, claiming without basis that Pharmavite's Nature Made® Prenatal Supplements (the two that were given "grades" of C+ and D+, as well as two that were given "grades" of B+) are adulterated, unless Pharmavite paid CLP millions of dollars. Defendants knew, or through their reckless indifference to the truth should have known, that Pharmavite's Nature Made® Prenatal Supplements are not adulterated in any manner whatsoever, and are no more "adulterated" or less "adulterated" than products CLP certifies on behalf of manufacturers that apparently have signed up and paid for certification.

24.     Pharmavite is informed and believes and thereon alleges that this unlawful and fraudulent money-making scheme is the crux of Defendants' enterprise, through which Defendants have swindled numerous companies to either pay CLP—either for a fraudulent "Certification," "Purity Award," or good "grades"—or be targeted and threatened with sham lawsuits for selling products that are every bit as safe and regulation-compliant as those products sold by the companies that give in to CLP's extortion tactics. Pharmavite is informed and believes, and thereon alleges, that it is simply one of Defendants' most recent targets for perpetrating this scam.

25.     Specifically, at the end of the first week in August 2020, Pharmavite received a demand letter dated July 14, 2020 (the "July 14, 2020 Demand Letter") with an enclosed draft complaint sent via U.S. Mail on behalf of CLP by a Michigan law firm.

26.     CLP's July 14, 2020 Demand Letter and enclosed draft complaint erroneously assert that the Nature Made® Prenatal Supplements are adulterated with two heavy metals, lead and cadmium; are adulterated with pesticides; and are under-formulated with respect to folic acid. In fact, Nature Made® Prenatal Supplements are compliant with applicable governmental standards, including Proposition 65 and FDA standards, adhere to the USP, and are not adulterated with the heavy metals, lead and cadmium; are not adulterated with pesticides; and are not under-formulated with respect to folic acid.

27.     CLP's assertion as set forth in its July 14, 2020 Demand Letter and enclosed draft complaint is premised, in part, on putative marketing claims that Pharmavite does not make regarding the products addressed in the letter, and on the putative conduct of a wholly-distinct dietary supplement company with which Pharmavite competes, but with which it does not have any other relationship. CLP threatened to file a sham lawsuit against Pharmavite in the Superior Court of the District of Columbia if Pharmavite did not agree to pay to CLP the sum of $1.9 million and acquiesce to other demands from CLP premised on its erroneous assertions about the Nature Made® Prenatal Supplements. CLP enclosed with its letter a draft complaint falsely alleging, among other things, that the Nature Made® Prenatal Supplements are adulterated under the District of Columbia Consumer Protection Procedures Act, D.C. Code Sections 28-3901 *et seq.*

28.     On August 18, 2020, CLP sent by interstate wires a second letter and email message to Pharmavite, again via its Michigan counsel, in furtherance of its sham litigation threat. Therein, CLP refused to provide testing information about the Nature Made® Prenatal Supplements requested by Pharmavite, and instead refocused on extorting money from Pharmavite to resolve the sham litigation, writing that if Pharmavite did not "resolve" the matter with CLP, CLP "will move forward with filing the complaint."

29.     On August 28, 2020, Hicks (the CEO of both Ellipse Analytics and Pure Market) emailed Pharmavite on behalf of CLP, identifying himself as CLP's "Chief Client Advocate" and referring to CLP as "our client." In his email, Hicks threatened to direct CLP to sue Pharmavite on claims Pharmavite knows to be without any legal merit, writing that "[w]e are proceeding with filing a complaint against Pharmavite," and threatening that "[i]f you lose, Pharmavite can expect to pay tens of millions if not more in damages."

30.     The "independent" testing on which CLP and Pure Market rely was performed, in part, by Ellipse Analytics—which is anything but "independent," and is one of the interconnected Defendants that comprise the single enterprise alleged herein.

31.     On their websites, CLP and Pure Market describe their testing methodologies, presumably including those on which their "grades" and threatened claims against Pharmavite are based, in identical terms. CLP and Pure Market refuse to guarantee the accuracy of the information or their analysis thereon:

> As we are testing one sample of each product, the presence and composition of various elements may vary from package to package. There may very well be inherent variability of the elements by lot and by individual unit. The findings that appear on our website, reflect our research at the time of publication, and may not be representative of other runs, lots, and even within an individual unit (e.g. bag, canisters, etc.) of the particular product tested. We cannot guarantee the accuracy of the information or analysis based thereupon. *See* https://cleanlabelproject.org/terms-and-conditions/at ¶ 19; https://www.puremarket.com/terms-conditions/ (Lab Testing Methodolgy).

32.     Both CLP and Pure Market further attempt to disclaim responsibility for the results and analyses, as follows:

> The results and findings are based on our own opinion and interpretation. The lab we use employs industry standard equipment and keeps it well maintained, but variances in instrumentation can cause variability or inaccuracies in the data and results. The lab data and results produce margins of error. Moreover, if there is any degradation, or if there are subsequent product reformulations or other factors, this

information might no longer be current. Our database is dynamic, which means that the findings may change based on evolving science, new information, new product tests, or other factors. We make no representations or warranties about any of the findings on our site. *See* https://cleanlabelproject.org/terms-and-conditions/at ¶ 19; https://www.puremarket.com/terms-conditions/ (Lab Testing Methodolgy).

33.     Even accepting Defendants' results as accurate, CLP's claims about lead in Pharmavite's Nature Made® Prenatal Supplements are false, and the grades published on Pure Market's website and linked to by CLP's website for the Nature Made® Prenatal Supplements are unwarranted and intentionally designed to disparage Pharmavite and cause it reputational and monetary harm unless and until Pharmavite agrees to pay.

34.     That is, the amount of lead that CLP (or Ellipse Analytics) claims to have detected in Pharmavite's Nature Made® Prenatal Supplements is ***lower*** than Proposition 65's safe harbor allowance of 0.5 micrograms/day for lead. The amount of lead detected thus also is ***lower*** than CLP's own standards set forth in Section VII, which provide that the maximum allowance for lead is 0.5 micrograms/daily serving.

35.     CLP's claims about cadmium in Pharmavite's Nature Made® Prenatal Supplements, and the grades published on Pure Market's website and linked to by CLP's website for the Nature Made® Prenatal Supplements, are similarly false and unwarranted, and likewise intentionally designed to disparage Pharmavite and cause it reputational and monetary harm unless and until Pharmavite agrees to pay.

36.     That is, the amount of cadmium that CLP (or Ellipse Analytics) allegedly detected in Pharmavite's Nature Made® Prenatal Supplements is ***lower*** than Proposition 65's safe harbor allowance of 4.1 micrograms/day for cadmium. It likewise is ***lower*** than the maximum allowance for cadmium under CLP's own standards as set forth in Section VII.

37.     CLP's claims about pesticides in Pharmavite's Nature Made® Prenatal Supplements, and the grades published on Pure Market's website and linked to by

CLP's website for the Nature Made® Prenatal Supplements, are similarly erroneous and unwarranted and likewise intentionally designed to disparage Pharmavite and cause it reputational and monetary harm unless and until Pharmavite agrees to pay.

38.     That is, the amount of trace pesticides that CLP (or Ellipse Analytics) allegedly detected in Pharmavite's Nature Made® Prenatal Supplements is **lower** than any stated in the Code of Federal Regulations Tolerances and Exemptions for Pesticide Chemical Residues in Food. Accordingly, it also is lower than the maximum allowance for pesticides under CLP's Section VII maximum tolerance standards.

39.     CLP's claims about folic acid, and the grades published on Pure Market's website and linked to by CLP's website, are similarly erroneous and unwarranted and likewise intentionally designed to disparage Pharmavite and cause it reputational and monetary harm unless and until Pharmavite agrees to pay. In fact, Pharmavite's Nature Made® Prenatal Supplements are formulated and rigorously tested to ensure that 100% or more of the label claim's folic acid is present in each product as of their respective expiration dates.

40.     The fraudulent nature of Defendants' threatened sham litigation (as well as its Certification program) and "grades" is further revealed by the fact that CLP and Pure Market list as "the Best" prenatal vitamins those of one of Pharmavite's direct competitors, a company called SmartyPants Vitamins ("SmartyPants")—even though the levels of lead in certain lots of SmartyPants' prenatal supplements, and the levels of cadmium in certain lots of SmartyPants' vitamins, are **equal to or higher than** those in the lots of Nature Made® Prenatal Supplements allegedly tested by Defendants.

41.     The CLP website reveals that CLP has awarded SmartyPants prenatal vitamins a CLP Purity Award. According to CLP's Code of Practice, the Purity Award is a "benchmarked" award allegedly given to products that meet the Code of Practice Certification standards and that are in the top 33% of those products tested in the category at issue.

42.     Yet SmartyPants' products do not appear to meet CLP's standards for issuance of the CLP Purity Award. The "Certification of Compliance" published on SmartyPants' website shows various CLP certifications-bearing prenatal products with significantly **_higher_** daily lead levels (expressed as micrograms/lead/daily serving) than the lead levels for which CLP threatened to sue Pharmavite and for which Pure Market gave the Nature Made® Prenatal Supplements poor "grades."

43.     Likewise, SmartyPants' website show various CLP certifications-bearing and "Purity Award"-bearing products with **_equal_** or **_higher_** levels of cadmium (expressed as micrograms/cadmium/daily serving) than the cadmium levels Defendants claim to have detected in Pharmavite's Nature Made® Prenatal Supplements, for which CLP threatened to sue Pharmavite, and for which Pure Market gave the Nature Made® Prenatal Supplements poor "grades."

44.     Defendants' ratings system for broad categories of dissimilar prenatal dietary supplements is fraudulent, and all times material herein Defendants knew or recklessly disregarded that their "benchmarking" on products in a broad category, without taking into account the significant differences in product formulation and ingredients, can impact the amounts of trace metals and pesticides detected and, accordingly, impact test results. As just one example, products containing more calcium likely will test higher for lead than products that do not contain calcium, as there are always trace amounts of lead in calcium. Accordingly, it would be scientifically and logically inappropriate to compare trace lead levels in a prenatal supplement containing calcium with lead levels in a prenatal supplement without calcium. Yet this is what Defendants do with respect to their lumping and rating all prenatal supplements together, regardless or their ingredients or formulations. In short, Defendants' "benchmarking" of products is recklessly indifferent to the facts and circumstances that would approximate an "apples to apples" comparison, or benchmarking, of products.

45.     Defendants' actions, including their reckless indifference to the truth regarding the nature and differences in ingredients and formulations for products that

they lump together for grading, and their reckless indifference to the truth regarding the levels, nature, and legal effect of chemicals they claim were detected in Pharmavite's Nature Made® Prenatal Supplements, are part of scheme or artifice to defraud, and are calculated to disparage and Pharmavite's Nature Made® Prenatal Supplements, and to extort money from Pharmavite in order to avoid the sham litigation CLP threatened to bring based on Defendants' baseless and unscientific testing results..

## FIRST CLAIM FOR RELIEF

### (Civil RICO, 18 U.S.C. § 1962)

46.     Pharmavite incorporates paragraphs 1 through 45 as though fully set forth herein.

47.     Defendants violated RICO by violating 18 U.S.C. §§ 1962.

48.     Defendants and the Product Testing, Grading, and Sham Lawsuit Enterprise engaged in the fraudulent schemes, acts, and misrepresentations described above, which violate 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1951 (attempted extortion), Cal.Penal Code § 518 (attempted extortion), and a pattern of racketeering.

49.     Specifically, Defendans posted on Pure Market's website—to which CLP's website links—that the 90-count version of Nature Made® Prenatal Multi rates a grade of D+, and that the 250-count version of the same product was awarded a grade of C+. Pure Market lists the "purity" of both the 90-count and 250-count versions of the Nature Made® Prenatal Multi as "fair" (without explaining what that means), and lists the "heavy metals" in the 90-count version as "below average" and in the 250-count version as "fair" (again without explaining what either means). The categories are depicted on Pure Market's website as lines of varying colors; on the 90-count version, the "heavy metals" category is red, while the overall "purity" is orange. The published "Grades" for Plaintiff's Nature Made® Prenatal Supplements are unsupported by Defendants' own published standards. As set forth above, these "grades" are bogus, unwarranted, and in contravention of CLP's own Section VII's maximum tolerance

limit requirements. In this manner, Defendants, acting in concert and through their Product Testing, Grading, and Sham Lawsuit Enterprise, are disparaging Pharmavite and causing it reputational and monetary harm.

50.     In addition, CLP's July 14, 2020 Demand Letter, sent by U.S. Mail, erroneously asserts that the Nature Made® Prenatal Supplements are adulterated with two heavy metals, lead and cadmium; are adulterated with pesticides; and are under-formulated with respect to folic acid. In fact, Nature Made® Prenatal Supplements are compliant with applicable governmental standards, including Proposition 65 and FDA standards, adhere to the USP, and are not adulterated with the heavy metals, lead and cadmium; are not adulterated with pesticides; and are not under-formulated with respect to folic acid.

51.     The assertion set forth in the July 14, 2020 Demand Letter is premised, in part, on putative marketing claims that Pharmavite does not make regarding the products addressed in the letter, and on the putative conduct of a wholly-distinct dietary supplement company with which Pharmavite competes, but with which it does not have any other relationship. In the July 14, 2020 Demand Letter, CLP threatened to file a sham lawsuit against Pharmavite in the Superior Court of the District of Columbia if Pharmavite did not agree to pay to CLP the sum of $1.9 million and acquiesce to other demands from CLP premised on its erroneous assertions about the Nature Made® Prenatal Supplements. CLP enclosed with its letter a draft complaint falsely alleging, among other things, that the Nature Made® Prenatal Supplements are adulterated under the District of Columbia Consumer Protection Procedures Act, D.C. Code Sections 28-3901 *et seq.* CLP threatened to file its complaint if Pharmavite did not agree to CLP's monetary and other extortionistic demands.

52.     On August 18, 2020, CLP sent by interstate wires a follow up letter and email message to Pharmavite, again via its Michigan counsel, in furtherance of its sham litigation threat. Therein, CLP refused to provide testing information about the Nature Made® Prenatal Supplements requested by Pharmavite, and instead refocused on

extorting money from Pharmavite to resolve the sham litigation, writing that if Pharmavite did not "resolve" the matter with CLP, CLP "will move forward with filing the complaint."

53. On August 28, 2020, Hicks (CEO of Ellipse Analytics and Pure Market) emailed Pharmavite on behalf of CLP, identifying himself as CLP's "Chief Client Advocate" and referring to CLP as "our client." In his email, Hicks threatened to direct CLP to sue Pharmavite on claims that lack any objective basis or legal merit, writing that "[w]e are proceeding with filing a complaint against Pharmavite," and threatening that "[i]f you lose, Pharmavite can expect to pay tens of millions if not more in damages."

54. Even if Defendants' test results were accurate (which is suspect in light of the fact that Ellipse Analytic's testing is neither "independent" nor peer reviewed, and Pharmavite is informed and believes, and thereon alleges, is lacking in nearly all measures of scientific validity), CLP's claims about lead in Pharmavite's Nature Made® Prenatal Supplements are false, and the grades published on Pure Market's website and linked to by CLP's website for the Nature Made® Prenatal Supplements are unwarranted and intentionally designed to disparage Pharmavite and cause it reputational and monetary harm unless and until Pharmavite agrees to pay.

55. That is, the amount of lead that CLP claims to have detected in Pharmavite's Nature Made® Prenatal Supplements is lower than Proposition 65's safe harbor allowance of 0.5 micrograms/day for lead. The amount of lead detected thus also is lower than CLP's own standards set forth in Section VII, which provide that the maximum allowance for lead is 0.5 micrograms/daily serving. The amount of lead detected also is lower than that of certain lots of SmartyPants' prenatal vitamins, which CLP gave its Purity Award, and which CLP and Pure Market publish on their websites are the "best" prenatal vitamins.

56. Similarly, the amount of cadmium that CLP (or Ellipse Analytics) allegedly detected in Pharmavite's Nature Made® Prenatal Supplements is lower than Proposition 65's safe harbor allowance of 4.1 micrograms/day for cadmium. It likewise

is lower than the maximum allowance for cadmium under CLP's own standards as set forth in Section VII. The amount of cadmium detected also is equal to or potentially lower than the amounts in certain lots of SmartyPants' vitamins, which CLP gave its Purity Award.

57.     Additionally, the amount of trace pesticides that CLP (or Ellipse Analytics) allegedly detected in Pharmavite's Nature Made® Prenatal Supplements is lower than any stated in the Code of Federal Regulations Tolerances and Exemptions for Pesticide Chemical Residues in Food. Accordingly, it also is lower than the maximum allowance for pesticides under CLP's Section VII maximum tolerance standards.

58.     Moreover, Pharmavite's Nature Made® Prenatal Supplements are formulated and rigorously tested to ensure that 100% or more of the label claim's folic acid is present in each product as of their respective expiration dates.

59.     Phamavite is informed and believes and thereon alleges that Defendants knew these statements about lead and cadmium levels, pesticides, and folic acid in Pharmavite's Nature Made® Prenatal Supplements were false when they made them, and Defendants further knew that these statements were misleading.

60.     As the draft complaint that CLP sent to Pharmavite reveals, the threatened lawsuit was based on intentional misrepresentations by Defendants regarding the contents of Pharmavite's Nature Made® Prenatal Supplements and objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits because it was based upon Defendants' testing methods (which includes the use of an affiliated laboratory), and in disregard for the fact that, as known to Defendants, Pharmavite's Nature Made® Prenatal Supplements met not only CLP's own stated guidelines, but also the applicable safety guidelines and regulations of the FDA, Proposition 65, and the USP. The threatened sham litigation, along with Defendants' misrepresentations regarding Pharmavite's Nature Made® Prenatal Supplements, were a direct and intentional attempt by Defendants and the Product Testing, Grading, and Sham Lawsuit Enterprise to wrongfully interfere with the business relationships of

Pharmavite, a competitor of Defendants' paying customers. CLP threatened to file the sham lawsuit without regard to the merits and for the unlawful purpose of wrongfully extorting money from Pharmavite to avoid the necessity of having to defend against Defendants' objectively baseless claims.

61.    The Product Testing, Grading, and Sham Lawsuit Enterprise's scheme is not immunized by the First Amendment right to petition the government because the First Amendment protects only conduct that is "genuine," not conduct that is designed solely to extort businesses out of money, with no regard to the merits or outcome. Here, the allegations, threats, and demands set forth in the demand letters were not genuine, but were objectively baseless.

62.    As set forth above, there are numerous indicators of the baselessness of the threats and allegations set forth in the demand letters. For example, Pharmavite is informed and believes, and thereon alleges, that Ellipse Analytical's testing of Pharmavite's Nature Made® Prenatal Supplements is not in fact appropriate or independent testing by a neutral third party laboratory, Defendants fraudulently and with reckless indifference characterized the test results and did not utilize sound scientific methodology to test Pharmavite's Nature Made® Prenatal Supplements, neither the testing nor the methodology were subjected to peer review, and the result of the testing were therefore inherently unreliable. In addition, as Defendants' own test results confirmed, and as Defendants have ignored, Pharmavite's Nature Made® Prenatal Supplements satisfied the safety standards of the FDA, USP, and Proposition 65, as well as CLP's own stated guidelines. In disregard of this fact, CLP threatened to sue Pharmavite, falsely alleging, among other things, that Pharmavite's Nature Made® Prenatal Supplements are adulterated and contain levels of lead, cadmium, and pesticides in excess of competing products.

63.    As a proximate result of Defendants' actions, Pharmavite has suffered and will continue to suffer damages and loss, in an amount to be determined at trial. By way of example and not by exclusion, Defendants' conduct and false representations have

directly caused Pharmavite reputational harm. Defendants' actions have caused and will continue to cause irreparable harm to Pharmavite for which there is no adequate remedy at law.

64. As a result, Pharmavite is entitled to treble damages, attorneys' fees, and costs as set forth by law.

**SECOND CLAIM FOR RELIEF**

(Violation of the Lanham Act, 15 U.S.C. § 1125(a))

65. Pharmavite incorporates paragraphs 1 through 64 as though fully set forth herein.

66. CLP states on its website that "Clean Label Project will work with you on the marketing of your award to both consumers and retailers." Pharmavite is informed and believes and thereupon alleges that Defendants, acting in concert and through the Product Testing, Grading, and Sham Lawsuit Enterprise, helped to promote and market product manufacturers who, unlike Pharmavite, have paid for CLP Certifications and/or Purity Awards award based upon the results of the so-called "independent" testing (which testing is actually performed, at least in part, by Defendants' own, affiliated testing laboratory). As part of this promotion and marketing of its fee-paying customers, Defendants target, punish, and penalize those manufacturers, like Pharmavite, who do not agree to make payments to CLP. Pharmavite is further informed and believes, and thereupon alleges, that Defendants knowingly fraudulently and with reckless indifference characterize their test results in order to accomplish their goal of demonizing the competition of its favored clients, and thereby provide an unfair competitive advantage to these competitors.

67. Defendants' activities constitute false descriptions and representations concerning the nature, characteristics, and qualities of Pharmavite's goods (*i.e.*, Pharmavite's Nature Made® Prenatal Supplements) in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68.     Defendants' false representations were made willfully and with intent to deceive the consuming public.

69.     Defendants statements were literally false and misleading and deceived, or at least had the capacity to deceive, consumers.

70.     Defendants' false representations had or will have a material effect on the consumers' purchasing decision.

71.     Defendants' misrepresentations affect interstate commerce. Such misrepresentations appear on the Internet, and Pharmavite has suffered and will continue to suffer damages and loss throughout the United States.

72.     As a proximate result of Defendants' actions, Pharmavite has suffered and will continue to suffer damages and loss, in an amount to be determined at trial. By way of example and not by exclusion, Defendants' conduct and false representations have directly caused Pharmavite reputational harm. Defendants' actions have caused and will continue to cause irreparable harm to Pharmavite for which there is no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

(Violation of California's Unfair Competition Law,

Cal. Bus & Prof. Code §§17200 *et seq.*)

73.     Pharmavite incorporates paragraphs 1 through 72 as though fully set forth herein.

74.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business acts or practice." Defendants engaged in conduct that violated two of the statute's three prongs, for which Pharmavite has standing to assert claims.

75.     Defendants committed unlawful business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* by their violation of the following, as set forth in detail above:

a)  Civil RICO, 18 U.S.C. Section 1962;

b) 18 U.S.C. § 1341 (mail fraud);

c) 18 U.S.C. § 1343 (wire fraud);

d) 18 U.S.C. § 1951 (attempted extortion);

e) California Penal Code § 518 (attempted extortion); and

f) Lanham Act (15 U.S.C. § 1125(a)).

76. Defendants committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* when, as set forth above, they made the false and misleading statements about "grades" assigned to, and related information about, Pharmavite's Nature Made® Prenatal Supplements, grading the Nature Made® Prenatal Supplements as inferior to those competing products despite the fact that Pharmavite's Nature Made® Prenatal Supplements are manufactured in compliance with all federal and state safety regulations, and in fact contain the same or fewer contaminants than other prenatal supplements, including SmartyPants prenatal supplements.

77. Defendants committed further unfair business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.,* when, as set forth above, they made extortionistic threats against Pharmavite in the demand letters and by threatening Pharmavite with sham litigation.

78. Defendants' unlawful and unfair business acts or practices occurred in the course of Defendants' business.

79. As a direct and proximate result of Defendants' unlawful and unfair business practices, Pharmavite has suffered and will continue to suffer damages and loss, in an amount to be determined at trial. By way of example and not by exclusion, Defendants' conduct and false representations have directly caused Pharmavite reputational harm. Defendants' actions have caused and will continue to cause irreparable harm to Pharmavite for which there is no adequate remedy at law.

/ / /

/ / /

/ / /

PHARMAVITE, LLC'S COMPLAINT

## FOURTH CLAIM FOR RELIEF

(Declaratory Relief, 28 U.S.C. § 2201 *et seq.*)

80.     Pharmavite incorporates paragraphs 1 through 79 as though fully set forth herein.

81.     The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.* prohibits the "introduction or delivery for introduction into interstate commerce any food … that is adulterated." 21 U.S.C. § 331(a). The statute requires the FDA to enforce its provisions through injunctions, fines or imprisonment, or seizure of the adulterated food. 21 U.S.C. §§ 332–334. A private individual cannot bring an action to enforce the FDCA. 21 U.S.C. § 337(a). The FDCA exclusively governs the issues of whether a dietary supplement is "adulterated." *See* 21 U.S.C. § 342.

82.     A state law claim based on a false or misleading product labeling is preempted by the FDCA "if it seeks to impose labeling or other requirements that are not identical to the requirements imposed by [21 U.S.C.] § 343(q), § 343(r), and the implementing regulations for those provisions." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *4 (N.D. Ill. Mar. 15, 2016).

83.     "'Not identical to' … means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act." 21 C.F.R. § 100.1(c)(4).

84.     Defendants have threatened to improperly file state law claims against Pharmavite alleging, *inter alia*, that the Nature Made® Prenatal Supplements are "adulterated" despite the fact that they satisfy all of the applicable provisions under the FDCA and the implementing regulations, as well as the applicable Prop 65 standards, and Defendants' own standards.

85.     An actual, substantial, and continuing justiciable controversy exits between Defendants and Pharmavite with respect to which Pharmavite requires a declaration of its rights by this Court. At present, the controversy relates to the issue of whether the Nature Made® Prenatal Supplements are "adulterated" pursuant to the FDCA, and Defendants' right to threaten and/or maintain a lawsuit based upon a claim that the Nature Made® Prenatal Supplements are "adulterated" in any manner that is inconsistent with the FDCA and the implementing regulations thereunder.

86.     To resolve the actual, substantial, and continuing justiciable controversy between Defendants and Pharmavite, Pharmavite seeks a a judicial decision pursuant to 28 U.S.C. § 2201 *et.seq.*, declaring that:

        a.  the Nature Made® Prenatal Supplements are not adulterated under the FDCA; and

        b.  any state law claims by Defendants alleging that the Nature Made® Prenatal Supplements are "adulterated," and premised on such allegations, are preempted by the FDCA.

## PRAYER FOR RELIEF

WHEREFORE, Pharmavite prays for judgment and relief against Defendants, jointly and severally, as follows:

1.     For temporary, preliminary and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors, and assigns, and those persons in active concert, participation or privity with them, or any of them:

        a.  From disparaging Pharmavite, its business, or its products in any manner, either in writing (including on the Internet), orally, or otherwise; and

        b.  From using any false description or false representation, and from making any false representations or from engaging in any act or acts which, either alone or in combination, constitute deceptive or unfair competition by Defendants with Pharmavite.

2.  That judgment be entered against Defendants for all damages sustained by Pharmavite on account of, *inter alia*, Defendants' violations of RICO, the Lanham Act, and the UCL, as well as treble damages as available under RICO.

3.  For declaratory judgment that:

a.  the Nature Made® Prenatal Supplements are not adulterated under the FDCA; and

b.  any state law claims by Defendants alleging that the Nature Made® Prenatal Supplements are "adulterated" and premised on such allegations, are preempted by the FDCA.

4.  That Pharmavite be awarded costs, attorneys' fees, and pre-judgment and post-judgment interest; and

5.  That Pharmavite be awarded other and further relief, both general and special, at law and equity, as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Pharmavite hereby demands a jury of any and all issues so triable of right.

Dated:  September 1, 2020          TATRO TEKOSKY SADWICK LLP

By:_____/s/ *René P. Tatro*_____
        René P. Tatro, Esq.
        Attorneys for Plaintiff Pharmavite LLC